JUSTIN M. HEILIG
HILL RIVKINS LLP
45 Broadway, Suite 2110
New York, NY 10006
(212) 669-0600
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EPI-USE AMERICA, INC., <br><br> Plaintiff, <br><br> - against - <br><br> TE CONNECTIVITY CORPORATION, <br><br> Defendant. | Case No. 25-cv-1770 <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff EPI-USE America, Inc. ("**EPI-USE**"), by and through its undersigned counsel, as and for its Complaint against Defendant TE Connectivity Corporation ("**TEC**"), alleges upon information and belief as follows:

### INTRODUCTION

1. In early 2022, Defendant TEC hired Plaintiff EPI-USE to perform design and software implementation services in connection with TEC's planned global implementation and roll-out of the SAP SuccessFactors and Employee Central Payroll software suite for its business operations.

2. TEC represented to EPI-USE that the implementation would involve a global roll-out and implementation in 16 countries.

3. Specifically, TEC advised EPI-USE that it would commence a Global Design Phase for Payroll and Workforce Time and Attendance Software across 16 countries.

1

4. Upon completion of this design phase, TEC represented that implementations would first be rolled out in Ireland and Brazil.

5. And thereafter, the Global Design would be rolled out across the remaining 14 countries throughout 2022-2024.

6. Plaintiff EPI-USE devoted significant time and resources in reliance upon Defendant TEC's representations that TEC intended to implement the SAP SuccessFactors and Employee Central Payroll software suite in its operations worldwide across 16 countries.

7. After completing the initial design and planning engagement, TEC contracted with EPI-USE to perform software implementations in Ireland and Brazil.

8. EPI-USE completed the implementation in Ireland in mid-2023.

9. In July 2023, TEC notified EPI-USE that it was halting the Brazil implementation and would not be moving forward on the global implementation of the SAP SuccessFactors and Employee Central Payroll software suite.

10. TEC breached the parties' contracts by failing to pay EPI-USE all amounts due. This action seeks to hold TEC responsible for its breaches of contract and, in the alternative, its unjust enrichment.

## PARTIES, JURISDICTION, AND VENUE

11. Plaintiff EPI-USE is a corporation formed and organized under the laws of the State of Delaware, with its principal place of business located at 303 Perimeter Center North, Suite 300, Atlanta, Georgia 30346.

12. Defendant TEC is a corporation formed and organized under the laws of the State of Pennsylvania, with its principal place of business located at 1050 Westlakes Drive, Berwyn, Pennsylvania 19312.

13. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over the claims asserted herein because Plaintiff EPI-USE and Defendant TEC are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

14. The United States District Court for the Southern District of New York is the proper venue for this action by virtue of a forum-selection clause contained in the Global Master Services Agreement at issue. Defendant TEC has consented to the personal jurisdiction of this Honorable Court by virtue of the same forum-selection clause.

## GENERAL ALLEGATIONS

**A. The MSA**

15. On or about January 20, 2022, Defendant TEC and Plaintiff EPI-USE executed and agreed to be bound by a Global Master Services Agreement, with an Effective Date of January 20, 2022 (the "**MSA**").

16. Pursuant to § V(A) of the MSA, Defendant TEC agreed to pay EPI-USE for all Services rendered and expenses incurred that are approved and undisputed within sixty (60) days after receipt of a valid invoice.

17. Pursuant to § VII(B) of the MSA, Defendant TEC had a right to terminate any SOW or the MSA itself for its convenience upon thirty (30) days' prior written notice.

18. Section VII(D) of the MSA provides, in relevant part, as follows:

    After termination, Supplier shall submit a final termination settlement to TE for all work performed up to the date of termination. Supplier will only be paid for services rendered and expenses incurred prior to the date of termination. In the event that a FP SOW is terminated before a certain milestone is complete, TE shall only be obligated to pay a pro-rata share of the milestone fees calculated by multiplying the percent of work completed by the total milestone fee. Upon notice of termination, Supplier may not remove any Supplier personnel from TE's account.

19. Section XII(A) of the MSA further provides, in relevant part:

    If a Supplier invoice does not meet the invoicing requirements of this Agreement, or if TE in good faith disputes any invoiced charges or underlying Services, TE will notify Supplier of the disputed items in writing with reasonable details about the reasons for the dispute on or before the payment due date and may withhold payment of the disputed invoiced amounts until the dispute is resolved; provided, however, that undisputed amounts shall remain due and payable by the payment due date.

20. Section XIII(H) provides:

    <u>Governing Law and Jurisdiction</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, United States of America, without regard to the conflict of laws principles thereof. All causes of action arising out of this Agreement shall be settled in the state or federal courts located in New York, NY.

**B. The Global Design SOW**

21. On or about January 20, 2022, Defendant TEC and Plaintiff EPI-USE executed and agreed to be bound by a Global Design Statement of Work, with an Effective Date of January 24, 2022 (the "**Global Design SOW**").

22. The Global Design SOW was issued under and pursuant to the MSA.

4

23. Pursuant to the MSA and Global Design SOW, EPI-USE prepared plans for a global implementation of the SAP SuccessFactors and Employee Central Payroll software suite in 16 countries where Defendant TEC operated at the time.

24. Defendant TEC led EPI-USE to believe that this design phase would be followed up by implementations in Ireland and Brazil, and thereafter in an additional 14 countries across TEC's global business operations, for an estimated total cost of $8.75MM.

25. EPI-USE relied to its detriment on Defendant TEC's representations by, among other things, devoting significant resources to the global design project and implementations that followed.

C. **The Ireland/Brazil SOW**

26. On or about May 27, 2022, Defendant TEC and Plaintiff EPI-USE executed and agreed to be bound by that certain Statement of Work – Ireland and Brazil, with an Effective Date of May 25, 2022 (the "**Ireland/Brazil SOW**").

27. Defendant TEC and Plaintiff EPI-USE agreed, through their writings, words, or conduct, to various change orders relating to the Ireland/Brazil SOW, including Change Order Nos. 002, 004, 006, 007, 008, 010, 012, 017, 018, 019, 020, 021, 022, 023, 024, 025, 026, 027, 028, 029, 031, and 033 (collectively, the "**Change Orders**"). (Collectively, the Global Design SOW, Ireland/Brazil SOW, and Change Orders, together with all attachments and exhibits thereto, are referred to as the "**Contract Documents**".)

28. In mid-2023, EPI-USE completed the software implementation for Ireland and was continuing to work on the implementation for Brazil, as contemplated by the Ireland/Brazil SOW.

29. EPI-USE invested significant time and resources to the project in reliance upon Defendant TEC's assurances that the completion of the Ireland and Brazil implementations would be followed by implementations in an additional 14 countries.

30. In July, 2023, TEC provided EPI-USE notice that it was halting the Brazil implementation and would not be moving forward with the global implementation of SAP SuccessFactors and Employee Central Payroll software suite in any more countries.

31. On December 15, 2023, EPI-USE sent Defendant TEC Invoice No. 2725661186 (the "**Closeout Invoice**"), in the amount of $730,322, for services performed.

32. EPI-USE performed the services in the Closeout Invoice with TEC's knowledge and consent.

33. The individuals listed in the Closeout Invoice worked the hours set forth in the Closeout Invoice for the benefit of TEC and EPI-USE's engagement with TEC.

34. TEC knew that EPI-USE was performing these services, accepted through their conduct the services provided by EPI-USE, and did not object at any time to EPI-USE providing these services.

35. However, Defendant TEC has failed and refused to satisfy the Closeout Invoice despite repeated demands for payment by Plaintiff EPI-USE.

## **FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT**

36. Plaintiff EPI-USE repeats and re-alleges paragraphs 1 through 35, as if set forth at length herein.

37. Through their writings, words, and/or conduct, Plaintiff EPI-USE and Defendant TEC agreed to be bound by the Contract Documents, which constitute binding and enforceable agreements.

38. Plaintiff EPI-USE performed its obligations under the Contract Documents in all material respects and all conditions precedent to Defendant TEC's performance have been satisfied.

39. Defendant TEC has breached the Contract Documents by failing to pay all amounts due EPI-USE under the Contract Documents, including the Closeout Invoice, milestone payments set forth in Ireland-Brazil SOW, and amounts due for services performed prior to TEC's termination of the Ireland-Brazil SOW.

40. By reason of the premises, Plaintiff EPI-USE has been damaged in an amount to be proven at trial but not less than $730,322.50, and also seeks to recover all costs, attorneys' fees, and pre- and post-judgment interest permitted by law.

## SECOND CLAIM FOR RELIEF – UNJUST ENRICHMENT
(In the Alternative)

41. Plaintiff EPI-USE repeats and re-alleges paragraphs 1 through 40, as if set forth at length herein, and alleges a second claim for relief in the alternative as permitted by Fed. R. Civ. P. 8(a).

42. Plaintiff EPI-USE provided Defendant TEC valuable benefits, including professional software coding, implementation, and design services.

43. Such services included devoting additional time and resources to developing more robust software solutions for the planned global implementation and rollout beyond simply those required for the implementations in Ireland and Brazil.

44. Plaintiff EPI-USE devoted additional resources and spent additional staff hours performing services in anticipation of and to facilitate the planned global implementation and rollout for TEC, which were not covered by the parties' Contract Documents.

45. These extra services were separate from and independent of the parties' Contract Documents, which gives rise to a bona fide dispute between the parties as to whether the valuable professional services provided by EPI-USE were covered by the parties' express contracts.

46. Defendant TEC accepted the valuable professional services provided by Plaintiff EPI-USE (a) with knowledge that Plaintiff EPI-USE expected to be paid for the services rendered, and (b) under circumstances in which it would be unjust and unreasonable for EPI-USE not to be paid for such services.

47. TEC knew that Plaintiff EPI-USE was providing more robust software coding, implementation, and design services in anticipation of and to facilitate the planned global implementation and rollout for TEC than would otherwise be performed if the implementations were only being performed for Ireland and Brazil.

48. TEC knew, or should have known, that Plaintiff EPI-USE was continuing to have its global experts perform services based on the expectation of the planned global rollout.

49. TEC also knew, or should have known, that Plaintiff EPI-USE was providing valuable global software coding, implementation, and design services outside of the parties' contracts for which Plaintiff EPI-USE was expecting to be paid.

50. TEC also knew, or should have known, that the global services being performed by Plaintiff EPI-USE offered a more robust solution than would be necessary for simply the

Ireland and Brazil implementations, yet permitted Plaintiff EPI-USE to continue to provide such services in expectation of the planned global rollout and implementation.

51. It would be manifestly unjust and inequitable to permit TEC to retain the benefits of Plaintiff EPI-USE's additional services without compensating Plaintiff EPI-USE.

52. By virtue of Plaintiff EPI-USE providing Defendant TEC valuable professional services, Defendant TEC has been unjustly enriched at the expense of EPI-USE.

53. It is against equity and good conscience that Defendant TEC be permitted to retain the value of the professional services provided by Plaintiff EPI-USE without paying Plaintiff EPI-USE for such services.

54. By reason of the premises, Plaintiff EPI-USE has been damaged in an amount to be proven at trial, and also seeks to recover all costs, attorneys' fees, and pre- and post-judgment interest permitted by law.

### THIRD CLAIM FOR RELIEF – QUANTUM MERUIT
(In the Alternative)

55. Plaintiff EPI-USE repeats and re-alleges paragraphs 1 through 54, as if set forth at length herein, and alleges a third claim for relief in the alternative as permitted by Fed. R. Civ. P. 8(a).

56. Plaintiff EPI-USE provided Defendant TEC professional software coding, implementation, and design services in good faith.

57. These extra services were separate from and independent of the parties' Contract Documents, which gives rise to a bona fide dispute between the parties as to whether the valuable professional services provided by EPI-USE were covered by the parties' express contracts.

58. TEC accepted the services provided by Plaintiff EPI-USE with knowledge that EPI-USE was expecting to be compensated for such services.

59. Plaintiff EPI-USE provided these additional services with the expectation that it would be compensated for the services.

60. EPI-USE is entitled to recover against TEC for the reasonable value of the services provided to TEC, in an amount to be proven at trial.

61. By reason of the premises, Plaintiff EPI-USE has been damaged in an amount to be proven at trial, and also seeks to recover all costs, attorneys' fees, and pre- and post-judgment interest permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff EPI-USE prays:

A. that process be issued against Defendant TEC in due form of law according to the practice of this Honorable Court, citing it to appear and answer the foregoing;

B. that judgment be entered against Defendant TEC on Plaintiff's First Claim for Relief, awarding EPI-USE damages in an amount to be determined at trial but not less than $730,322.50;

C. that judgment be entered against Defendant TEC on Plaintiff's Second Claim for Relief in the alternative, awarding EPI-USE all amounts by which Defendant TEC was unjustly enriched to be determined at trial and requiring the disgorgement thereof;

D.  that judgment be entered against Defendant TEC on Plaintiff's Third Claim for Relief in the alternative, awarding EPI-USE the reasonable value of the services provided to Defendant TEC, in an amount to be determined at trial;

E.  that for each Claim for Relief the Court award Plaintiff EPI-USE all costs, expenses, reasonable attorneys' fees, and pre- and post-judgment interest permitted by law; and

F.  for such other and further relief as this Honorable Court deems just and proper under the circumstances.

Dated: New York, New York
March 3, 2025

HILL RIVKINS LLP, *Attorneys for*
Plaintiff EPI-USE America, Inc.

By: _/s/ Justin M. Heilig_

Justin M. Heilig
45 Broadway, Suite 2110
New York, NY 10006
Tel: (212) 669-0600
Email: jheilig@hillrivkins.com