UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EPI-USE AMERICA, INC., Plaintiff, -v- TE CONNECTIVITY CORPORATION, Defendant. | 25 Civ. 1770 (JPC) OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

Plaintiff EPI-USE America, Inc. has sued Defendant TE Connectivity Corporation for missed payments stemming from the parties' spoiled business relationship. Defendant has since moved to dismiss Plaintiff's Complaint for failure to state a claim. For the reasons that follow, the Court grants Defendant's motion in part and denies it in part.

## I. Background

### A. Facts[1]

Plaintiff, a Delaware corporation with its principal place of business in Atlanta, Georgia, specializes in software coding, design, and implementation services. Compl. ¶¶ 1, 11, 42. On

[1] The facts contained in this section, which are assumed true solely for purposes of this Opinion and Order, are taken from Plaintiff's Complaint, Dkt. 1 ("Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor"). The Court also considers the Master Services Agreement ("MSA") and the Ireland and Brazil Statement of Work ("Ireland/Brazil SOW") attached to Defendant's motion to dismiss, Dkt. 22 ("Motion"), Exhs. A ("MSA"), C ("Ireland/Brazil SOW"), which are incorporated by reference into the Complaint, *see, e.g.*, Compl. ¶¶ 15, 26. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 147, 152 (2d Cir. 2013); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019).

January 20, 2022, Defendant, a Pennsylvania corporation with its principal place of business in Berwyn, Pennsylvania, contracted with Plaintiff for Plaintiff to design and implement software services related to Defendant's business operations, namely payroll and timekeeping. *Id.* ¶¶ 1, 3, 12, 15, 21. That contract, known as the MSA, established that "[p]ursuant to [its] terms," Plaintiff would "provide [Defendant] with services (the 'Services') in accordance with the specifications provided by [Defendant] and any Statement of Work [('SOW')]." MSA § II(A). But the MSA made clear that the "invalidation, fulfillment, waiver, termination, or any other disposition of any rights or obligations of either [Defendant] or [Plaintiff] or both, arising from the execution of [the MSA] in conjunction with any one SOW shall not affect the status of the rights or obligations of either or both of the parties arising from the execution of [the MSA] in conjunction with any other SOW," and that any SOW would "be subject to the terms and conditions of [the MSA] regardless of the date the SOW is executed." *Id.* Indeed, should there be a conflict between the MSA and a SOW, the MSA dictated that its "terms" would "prevail" over the SOW's, unless the SOW "expressly amend[ed] or overr[o]de the terms and conditions of" the MSA. *Id.* § XIII(R).

Defendant would "be charged at a [time-and-materials] or [fixed-price] basis, as applicable, specified in a SOW," and Plaintiff would "provide invoices" describing "the nature of the Services performed, the rate at which the Services were performed and the expenses, if any, that were incurred," in which case Defendant would "pay" Plaintiff "for all Services rendered and expenses incurred that [were] approved and undisputed within sixty (60) days after receipt of [Plaintiff's] valid invoice." *Id.* §§ I(M), (EE), V(A). A "valid" invoice was to "include a date, billing period (time period of charges), Purchase Order number (provided by [Defendant]), the total amount due, and [information about Plaintiff's] personnel." *Id.* § V(B). The MSA further required Plaintiff to "submit invoices, on a monthly basis, to [Defendant] through its supplier portal." *Id.* And of

particular relevance here is the "Waiver of Billing" clause, which specified that

> [Defendant] shall not be liable for, and [Plaintiff] shall waive its right to claim payment of, any fees, costs, taxes and expenses arising out of [the MSA] for which [Defendant] does not receive an invoice within ninety (90) days after the date such invoice should have been provided to [Defendant] in accordance with the invoice requirements herein.

*Id.* § V(F).

The MSA also specified how the parties' relationship would end. Defendant could "terminate [the MSA] or any SOW . . . or other document related to [the MSA] at any time, without cause, upon thirty (30) days prior written notice to [Plaintiff] with no further financial liability." *Id.* § VII(B). A "termination" of the MSA itself would "automatically terminate all outstanding SOWs and Purchase Orders." *Id.* § VII(D). And "[a]fter termination," Plaintiff was to "submit a final termination settlement to [Defendant] for all work performed up to the date of termination." *Id.* Plaintiff would "only be paid for services rendered and expenses incurred prior to the date of termination." *Id.* Any "causes of action arising out of" the MSA would be "governed by" New York law. *Id.* § XIII(H).

Also on January 20, 2022, the same date the MSA was executed, the parties executed a Global Design Statement of Work ("Global Design SOW") pursuant to the MSA. Compl. ¶¶ 21-22. Under the MSA and the Global Design SOW, Plaintiff made design plans to implement a payroll software suite in sixteen countries where Defendant operated. *Id.* ¶¶ 1-3, 23. According to Plaintiff, Defendant represented that implementations would first be rolled out in Ireland and Brazil, to be followed by the remaining fourteen countries, for a total estimated cost of $8.75 million. *Id.* ¶¶ 4-5, 23-24. To that end, on May 27, 2022, the parties executed the Ireland/Brazil SOW. *Id.* ¶ 26. Under the Ireland/Brazil SOW, invoices would be "generated based on" a table provided, which specified the "Invoice Date" on the last day of every month. Ireland/Brazil SOW

at 33.

By mid-2023, Plaintiff had completed the software implementation for Ireland and was continuing to work on the implementation for Brazil. Compl. ¶ 28. But in July 2023, Defendant gave Plaintiff notice that it was suspending the Brazil implementation and would not be proceeding with implementing the software suite in any of the other fourteen countries. *Id.* ¶ 30. And on December 15, 2023, Plaintiff sent Defendant what it refers to as the "Closeout Invoice" for services performed in the amount of $730,322.00. *Id.* ¶ 31. But despite Plaintiff's repeated demands for payment, Defendant has yet to satisfy the Closeout Invoice. *Id.* ¶ 35.

### B. Procedural History

Plaintiff initiated this action on March 3, 2025. Dkt. 1. The Complaint raises three claims, the first for breach of contract and the latter two in the alternative for unjust enrichment and *quantum meruit*. Compl. ¶¶ 36-61. On June 9, 2025, this Court granted Defendant leave to file a motion to dismiss the Complaint and set a briefing schedule on that motion. Dkt. 20. Consistent with that briefing schedule, Defendant moved to dismiss the Complaint on June 23, 2025. Dkt. 21; Motion. On July 14, 2025, Plaintiff filed its opposition to the motion. Dkt. 25 ("Opposition"). Defendant replied on July 28, 2025. Dkt. 26 ("Reply"). After the parties conveyed their efforts to resolve this case through mediation, *see* Dkts. 29, 36, the Court stayed the case on January 28, 2026, Dkt. 38. Because mediation was unsuccessful, Dkt. 39, the Court lifted the stay on April 13, 2026, Dkt. 40.

## II. Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III. Discussion

While Plaintiff's breach of contract claim survives, its quasi-contract claim fails.

### A. Plaintiff's Breach of Contract Claim Survives Because the MSA Is Ambiguous.

According to Defendant, Plaintiff's breach of contract claim fails because Plaintiff did not submit the Closeout Invoice within ninety days from when it was due under the MSA, a requirement that Defendant asserts was a condition precedent. Motion at 6-10 ("[Plaintiff] does not plead satisfaction of the applicable condition precedent. In fact, [Plaintiff] admits that it did not provide [Defendant] with the Closeout Invoice until December 2023, more than two months after it could have submitted an invoice under the MSA for reimbursement."); *accord* Reply at 1-5; *see* MSA § V(F). To plead breach of contract under New York law, the complaint must allege not only the "failure of defendant to perform" but also "performance by the plaintiff." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (internal quotation marks omitted). For this reason, as a matter of New York law "no action for breach of contract lies where the party seeking to enforce the contract has failed to perform a specified condition precedent." *POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 753 (S.D.N.Y. 2021) (citation modified).

A "condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F. 3d 297, 305 (2d Cir. 2016) (internal quotation marks omitted). "[U]nder New York law, the failure of a plaintiff to comply with conditions precedent is an affirmative defense," *Endovasc, Ltd. v. J.P. Turner & Co.*, 169 F. App'x 655, 657 (2d Cir. 2006) (summary order), meaning that a defendant can raise it in a "pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint," although dismissal is "appropriate only if it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 149-50 (2d Cir. 2024) (internal quotation marks omitted). So "[w]hen commercial parties expressly agree that a specified occurrence shall be a condition precedent to the . . . enforceability of a right or obligation," the court may assess on judicially noticeable matters whether "the condition precedent has been complied with," but only if "there is no ambiguity arising out of other language in their contract." *David Fanarof, Inc. v. Dember Constr. Corp.*, 600 N.Y.S. 2d 226, 227-28 (1st Dep't 1993). When such ambiguity exists, including "as applied to a particular set of facts," the court thus "has insufficient data to dismiss the . . . Complaint for failure to state a claim for breach of contract." *Metro-Goldwyn-Mayer Studios Inc. v. Canal & Distrib. S.A.S.* ("*MGM*"), No. 07 Civ. 2918 (DAB), 2010 WL 537583, at *7-8 (S.D.N.Y. Feb. 9, 2010) (internal quotation marks omitted).

That is the case here. The parties agree that the Closeout Invoice was "a final termination settlement" under Section VII(D) of the MSA. *Compare* Opposition at 8 ("The Closeout Invoice represented the 'final termination settlement' required by section VII(D) for all work performed up to the date of termination."), *with* Reply at 1-2 (referring to the "Closeout Invoice under Section

VII(D)"). But the parties dispute whether such "a final termination settlement" was "subject to the monthly invoicing provisions of sections V(B) and (F)." *Compare* Opposition at 8, *with* Reply at 1-2 ("[W]hen the MSA is read as a whole, it is clear that Section VII(D) of the MSA is subject to Sections V(B) and (F)."). The Court holds that the answer to that dispute is not "clear" on the "face" of the MSA, such that the MSA is "ambiguous"—and Plaintiff's breach of contract claim is thus "not dismissible on the pleadings." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F. 3d 168, 177-78 (2d Cir. 2004) (internal quotation marks omitted).

As Plaintiff points out, and Defendant does not dispute, on its own terms "[S]ection VII(D) does not set forth a deadline by which [Plaintiff] was required to submit a 'final termination settlement.'" Opposition at 8. Rather, Section VII(D) merely provides that "a final termination settlement" "shall" be submitted "[a]fter termination." MSA § VII(D) ("After termination, [Plaintiff] shall submit a final termination settlement to [Defendant] for all work performed up to the date of termination. [Plaintiff] will only be paid for services rendered and expenses incurred prior to the date of termination."). Defendant instead argues that the "Closeout Invoice under Section VII(D) is clearly encapsulated by Section V(F) as it seeks payment of fees, costs, taxes and expenses arising out of the MSA." Reply at 1-2. Section V(F) does refer to Plaintiff's "right to claim payment of[] any fees, costs, taxes and expenses arising out of [the MSA]," but only in relation to "the invoice requirements herein." MSA § V(F). And the invoice requirements referenced, specified in Section V(B), in turn establish that Plaintiff "shall submit invoices, on a monthly basis, to [Defendant] through its supplier portal." *Id.* § V(B). But that requirement—which makes no mention of "a final termination settlement"—"is not self-reading" and "could suggest more than one meaning when viewed objectively" and in context with the rest of the MSA. *Eternity Glob. Master Fund*, 375 F.3d at 177-78, 180 (defining ambiguity under New York law).

It could be that any claim for any fees under the MSA, including "a final termination settlement," must have been submitted monthly, as Defendant urges. *See* Reply at 1-2. Or it could be that the only invoices that must have been submitted monthly were those that were part of the "ongoing" project but not "termination and wind-down," as Plaintiff presses. Opposition at 8. After all, Section VII(D) refers to "*all work* performed up to the date of termination," MSA § VII(D) (emphasis added), rather than just the work performed between the date of termination and the submission of the last monthly invoice. The MSA "could admit of either interpretation" offered, thus rendering it "ambiguous on its face." *Flannigan v. Vulcan Cap. Mgmt.*, No. 05 Civ. 7404 (BSJ), 2008 WL 11517448, at *2-3 (S.D.N.Y. Apr. 30, 2008) (internal quotation marks omitted); *see Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 395 (2d Cir. 2023) (explaining that under New York law, "[a]mbiguity exists where a contract's terms are subject to more than one reasonable interpretation" (citation modified)).[2]

Just because the MSA is facially ambiguous, however, does not mean that Defendant is foreclosed from relying on the monthly invoicing requirement as a condition precedent. Rather, the ultimate question remains whether the parties unambiguously intended "a final termination settlement" to be subject to the monthly invoicing requirement. *See Edelman Arts, Inc. v. Art Int'l*

---

[2] For this reason, Defendant's reliance on *POSCO Energy* fails. *See* Reply at 1-2 (discussing 560 F. Supp. 3d at 754). In *POSCO Energy*, the plaintiff attempted to argue that a condition precedent under one provision was irrelevant because its breach claim was based on the defendant's failure to perform under another provision which did not include a condition precedent. *See* 560 F. Supp. 3d at 754. The court rightfully rejected that argument because under the contract's plain language, the defendant's duty under the latter provision arose only if the plaintiff first satisfied the condition precedent in the former provision. *See id.* ("POSCO therefore cannot claim based on Section 4.8 that FuelCell failed to use its best efforts to remove the restrictive legends if POSCO never satisfied the condition precedent in Section 3.8 to trigger FuelCell's duty to remove the legends."). Here, by contrast, there is "ambiguity arising out of other language in the[] contract," so the Court cannot resolve "whether the condition precedent has been complied with," as it is unclear whether such a condition even applies. *David Fanarof*, 600 N.Y.S.2d at 227-28.

*(UK) Ltd.*, 841 F. Supp. 2d 810, 826 (S.D.N.Y. 2012) (explaining that New York contract-law "principles express an interpretive preference dedicated to finding an unambiguous *intent* to condition" performance "on the language in question" (internal quotation marks omitted)). And to "ascertain the correct and intended meaning" of the MSA, "extrinsic evidence may be considered." *Eternity Glob. Master Fund*, 375 F.3d at 177-78 (internal quotation marks omitted); *accord Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 53-54 (2d Cir. 2011) (finding "no error in the district court's determination that the contract documents were ambiguous" relating to whether a requirement "was a condition precedent" under New York law and consequent consideration of "extrinsic evidence as to the parties' intent"); *Flannigan*, 2008 WL 11517448, at *2-3 (denying a motion to dismiss because "the contract was ambiguous on its face" and under New York law "the contract's inclusion of a condition precedent could not be determined without first examining extrinsic evidence"); *cf. DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 654 (2d Cir. 1994) (applying general contract-law principles relating to a condition precedent and explaining that to "the extent that [an] ambiguity exists, a textual analysis of the Agreement may be supplemented by an exploration of extrinsic evidence concerning the parties' intent"). But the consideration of extrinsic evidence "preclud[es] dismissal on the pleadings." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 442 (2d Cir. 2024).

Extrinsic evidence bearing on whether the parties intended the Closeout Invoice to be submitted on a monthly basis is a subject for discovery and, if appropriate, summary judgment—but not this motion to dismiss. *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). Because it is uncertain, on the face of the MSA, whether the Closeout Invoice—as "a final termination settlement"—needed to be submitted monthly like other invoices, such "uncertainty,

alone, is sufficient to deny" Defendant's motion to dismiss the breach of contract claim for failure to perform a condition precedent. *Gull Keys I LLC v. Fulton Advisory Beef Fund I, LLC*, No. 23 Civ. 9058 (MKV), 2025 WL 2510608, at *8 (S.D.N.Y. Sept. 2, 2025) (citing *MGM*, 2010 WL 537583, at *8). The Court thus need not resolve the parties' other arguments, including whether the monthly-invoicing requirement is indeed a condition precedent (rather than a simple promise) and, if so, whether Defendant waived any failure of Plaintiff to satisfy that condition precedent. *Compare* Opposition at 9-14, *with* Reply at 2-7.

**B. Plaintiff's Quasi-Contract Claim Is Duplicative of its Breach of Contract Claim.**

The Court, however, agrees with Defendant that Plaintiff's claims for unjust enrichment and *quantum meruit* should be dismissed as duplicative of its breach of contract claim.

To start, because *quantum meruit* is a "measure of liability for the breach" of a quasi contract for which unjust enrichment is "a required element," "*quantum meruit* and unjust enrichment are not separate causes of action" and may be "analyze[d] . . . together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citation modified). Plaintiff undoubtedly brought this quasi-contract claim in the alternative, *see* Compl. ¶¶ 41, 55, but "the availability of alternative pleading does not save a quasi-contract claim that duplicates a claim for breach of contract," *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 354 (S.D.N.Y. 2021). And a quasi-contract claim duplicates a breach of contract claim where there is "a valid and enforceable written contract" that "governs the relevant subject matter." *Delshah 60 Ninth, LLC v. Free People of PA LLC*, 175 F.4th 192, 200 (2d Cir. 2026) (*per curiam*) (internal quotation marks omitted). "If, however, there is a *bona fide* dispute as to the existence of a contract or whether the scope of an existing contract covers the disagreement between the parties, a party will not be required to elect his or her remedies and may

proceed on both quasi contract and breach of contract theories." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 187-88 (2d Cir. 2023) (citation omitted).

Here, Plaintiff alleges that it "devoted additional resources and spent additional staff hours performing services in anticipation of and to facilitate the planned global implementation and rollout for [Defendant], which were not covered by the parties' Contract Documents," and that "[t]hese extra services were separate from and independent of the parties' Contract Documents." Compl. ¶¶ 44-45. This gap, according to Plaintiff, "gives rise to a *bona fide* dispute between the parties as to whether the valuable professional services provided by [Plaintiff] were covered by the parties' express contracts." *Id.* ¶ 45. But that allegation is undermined elsewhere in the Complaint, where Plaintiff alleges that it "prepared plans for a global implementation of the . . . software suite in 16 countries where Defendant . . . operated," preparation done "*[p]ursuant to the MSA and Global Design SOW*." *Id.* ¶ 23 (emphasis added). Although Defendant pointed out that Plaintiff's "own admissions" suggest that no such *bona fide* dispute exists about the scope of the MSA and Global Design SOW, *see* Motion at 12 (citing Compl. ¶ 23), Plaintiff failed to respond to that argument, *see generally* Opposition at 15-16. "It is well-established that a plaintiff effectively concedes a defendant's arguments by his failure to respond to them." *1st Amendment Praetorian v. N.Y. Times Co.*, No. 23 Civ. 12 (MKV), 2025 WL 949575, at *11 (S.D.N.Y. Mar. 28, 2025) (internal quotation marks omitted). And regardless of any concession by Plaintiff, because as alleged the services Plaintiff performed to help facilitate the software suite's global implementation and rollout were covered by the MSA and the Global Design SOW, there is no *bona fide* dispute about whether those contractual documents cover the disagreement between the parties, notwithstanding Plaintiff's conclusory allegation to the contrary. *Compare* Compl. ¶ 23,

*with id.* ¶¶ 44-45. So Plaintiff's unjust enrichment and *quantum meruit* claims are duplicative of its claim for breach of contract, and are thus dismissed with prejudice.[3]

## IV. Conclusion

For the above reasons, the Court grants Defendant's motion to dismiss Plaintiff's unjust enrichment and *quantum meruit* claims with prejudice and without leave to amend and denies Defendant's motion to dismiss Plaintiff's claim for breach of contract. The Clerk of Court is respectfully directed to close Docket Number 21.

SO ORDERED.

Dated: July 6, 2026
New York, New York

JOHN P. CRONAN
United States District Judge

[3] While Plaintiff indicates it "is prepared to amend its Complaint to include . . . facts should the Court be inclined to dismiss [Plaintiff's] claims without prejudice," Opposition at 6 n.1, 16, Plaintiff fails to explain how any additional allegations would alter this conclusion, so the Court does not grant leave to amend. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025) (finding no abuse of discretion in the district court's dismissal of a complaint without leave to amend where the plaintiff requested leave in an opposition brief, but did not explain how the plaintiff would cure the complaint's defects); *Noto v. 22nd Century Grp. Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) ("[D]enial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." (internal quotation marks omitted)).